UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

RYAN SAMSEL,

                             Petitioner,         Civil Action No. 24-cv-05026

    -against-                                (Kovner, J.)

COLETTE S. PETERS, Director of Federal Bureau of
Prisons, WARDEN, Metropolitan Detention Center –
Brooklyn, Federal Bureau of Prisons, RONALD L. DAVIS,
Director U.S. Marshalls Service, THOMAS N. FAUST,
Director Department of Corrections of the District of
Columbia, and MERRICK GARLAND, Attorney General
as Head of the U.S. Department of Justice,

                           Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**FEDERAL RESPONDENTS' MEMORANDUM OF LAW
IN OPPOSITION TO PETITIONER'S MOTION FOR
A PRELIMINARY INJUNCTION AND TO HIS REQUESTS
FOR THE ISSUANCE OF A WRIT OF HABEAS CORPUS
AND THE ISSUANCE OF A WRIT OF MANDAMUS**

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271-A Cadman Plaza East, 7th Flr.
Brooklyn, New York 11201
(718) 254-6026/7000
August 20, 2024

Kathleen A. Mahoney
Assistant U.S. Attorney
   (Of Counsel)

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    A. Relevant Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
    B. The Habeas Petition (24-cv-05026) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    C. The Mandamus Petition (24-cv-05027) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    D. Samsel's Motion for Temporary Restraining Orders (24-cv-05026)  . . . . . . . . . 11
    E. Samsel's Motion for Hearing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
    F. The Orders Dated August 14, 2024  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

I.
PETITIONER'S MOTION FOR
A PRELIMINARY INJUNCTION MUST BE DENIED . . . . .. . . . .12

    A. Standards for Issuance of a Preliminary Injunction . . . . . . . . . . . . . . . . . . . . . .12
    B. Samsel Does Not Meet the Standards for Issuance of a Preliminary Injunction . . 13
        1. Samsel is Not Entitled to an Injunction Prohibiting his Transfer . . . . . . . . 13
        2. This Court Should Not Order an Immediate Independent Medical
           Examination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
        3. An Injunction is Not Necessary With Respect to Medical Records . . . . . . 16

II.
PETITIONER'S REQUEST FOR
A WRIT OF HABEAS CORPUS MUST BE DENIED. . . . . . . . . . .17

    A. Samsel Has Not Exhausted Administrative Remedies . . . . . . . . . . . . . . . . . . . . .17
    B. Samsel is Not Entitled to a Writ of Habeas Corpus . . . . . . . . . . . . . . . . . . . . . .19

III.
PETITIONER'S REQUEST FOR
A WRIT OF MANDAMUS MUST BE DENIED. . . . . . . . . . . . . . . 21

    A. Mandamus Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
    B. Samsel Does Not Satisfy the Requirements for Issuance of a Writ of
        Mandamus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

## **TABLE OF AUTHORITIES**

### **Cases**

*Anderson v. Bowen,* 881 F.2d 1 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Beal v. Stern*, 184 F.3d 117 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . .17

*Daileader v. Certain Underwriters at Lloyds London Syndicate 1861,*
    96 F.4th 351 (2d Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Estelle v. Gamble*, 429 U.S. 97 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Heckler v. Ringer*, 466 U.S. 602 616-17 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*JTH Tax, LLC v. Agnant*, 62 F.4th 658 (2d Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Lallave v. Martinez,* 609 F. Supp. 3d 164 (E.D.N.Y. 2022) . . . . . . . . . . . . . . . . . . . . . . .17, 18

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) . . . . . . . . . . . . . . . . . . . . . . .12

*North American Soccer League, LLC v. United States Soccer Federation, Inc*.,
    883 F.3d 32 (2d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577 (2d Cir. 1989) . . . . . . . . . . . . . .13

*Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*United States v. Samsel*, Docket No. 22-3034, 2022 WL 2903450
    (D.C. Cir. July 22, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Winter v. National Resources Defense Council*, 555 U.S. 7 (2008) . . . . . . . . . . . . . . . . . . .12

### **Statutes**

18 U.S.C. § 3142(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

28 U.S.C. § 1361 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28 U.S.C. § 2241. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 9, 17

28 U.S.C. § 2241(c)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 U.S.C. § 1997a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 23

**<u>Regulations</u>**

28 C.F.R. §§ 542.13 – 542.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**<u>Rules</u>**

Fed. R. Civ. P. 65(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**<u>Other</u>**

.www.htmpl://My.clevelandclinic.org/health/symptoms/16227-enlarged-male-breast-tissue-gynecomastia. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

## PRELIMINARY STATEMENT

Respondents Colette S. Peters, Director, Federal Bureau of Prisons (BOP), Warden of the Metropolitan Detention Center – Brooklyn ("MDC"), Ronald L. Davis, Director, United States Marshalls Service ("USMS"), and Merrick Garland, Attorney General of the United States of America (collectively "Federal Respondents"),[1] respectfully submit this memorandum of law in opposition to the motion for a preliminary injunction in this habeas action pursuant to 28 U.S.C. § 2241 brought by Petitioner Ryan Stephen Samsel ("Samsel"),. Federal Respondents also oppose Samsel's petitions for a writ of habeas corpus and a writ of mandamus.

Samsel, a convicted "January 6th" defendant, seeks to have this Court order that he remain in Brooklyn even though he is scheduled to be sentenced next month in the District of Columbia. Further, contrary to Samsel's claims, Federal Respondents have not denied, and are not denying, necessary medical care to Samsel, and have not failed to provide him with his medical records. For these reasons, Samsel's motion for a preliminary injunction must be denied. Samsel is not entitled to this extraordinary remedy against Federal Defendants.

Samsel's habeas petition seeking immediate release to obtain medical treatment should be denied because he failed to exhaust administrative remedies before bringing this action. In any event,  there is no reason for the Court to order the requested relief. Samsel is not being deprived of adequate medical care, including independent evaluation.

Finally, Samsel is not entitled to the issuance of a writ of mandamus. He has not shown that Federal Respondents have failed to execute any nondiscretionary duty or that no other adequate remedy is available.

---

[1] Thomas N. Faust, Director of the Department of Corrections of the District of Columbia is not a federal official.

1

Accordingly, Federal Respondents request that the Court deny Samsel's motion for a preliminary injunction. Federal Respondents further request that the Court deny the petition for a writ of habeas corpus and the petition for a writ of mandamus.

<u>**STATEMENT OF THE CASE**</u>

**A. <u>Relevant Background</u>**

On January 6, 2021, Samsel was in the group that breached the United States Capital grounds and interrupted the joint session of Congress that had convened to certify the Electoral College votes for the 2020 presidential election. *See United States v. Samsel, et al*, 21-cr-00537-JMC-1 (D.D.C.) ("Crim. Dkt.") Doc. #345 (Findings of Fact and Conclusions of Law) at 4-6, 7.[2] After entering the closed area, Samsel pushed a metal barricade (bicycle rack) into Officer C.E. and struck her in the face with it causing her to fall and strike her head. *Id*. at 8-9. Following the breach, Samsel had multiple skirmishes with United States Capitol Police ("USCP") officers on the Capitol grounds, including striking some with a flagpole, throwing a plank at them, and grabbing an officer's riot shield. *Id*. at 11.

Samsel was charged in a criminal complaint on January 29, 2021. *See* Crim. Dkt. Doc. #1; *see also* Declaration of Nicole T. Lewis dated August 19, 2024 ("Lewis Decl.") Ex. 2. He was arrested on January 30, 2024, and has been held without bond since his arrest in several federal and local facilities. *See* Lewis Decl. Ex. 1.

The filings on the public docket in Samsel's criminal case reveal these salient facts concerning Samsel's medical treatment and records:

---

[2] A printout of this docket report is Exhibit A to Declaration of Assistant U.S. Attorney Kathleen A. Mahoney dated August 20, 2024.

On September 11, 2021, Samsel filed an emergency motion seeking to have USMS and/or Central Virginia Regional Jail (where he was housed) provide "medically necessary" treatment and produce his medical records. *See* Crim. Dkt. Doc. #49. The Government's Status Report dated September 20, 2021, stated that USMS had provided all of Samsel's medical records that were available to USMS to Samsel's defense counsel and that Samsel had undergone examination in August. *See* Crim. Dkt. Doc. #51 at 1-2; *see also* Doc. #57 at 12. Samsel subsequently reported that he had not been treated for new injuries. Crim. Dkt. Docs. #54, #55. By Minute Order following a hearing on October 29, 2021, United States District Judge Timothy Kelly ordered the Government to provide Samsel's counsel by November 9, with all of Samsel's medical records pertaining to his medical care while detained. *See* Crim. Dkt. p.20. On November 22, defense counsel acknowledged that Samsel had received "a voluminous production of medical records" and only a few records remained outstanding. Crim. Dkt. Doc. #63 at 2-3.[3]

On November 23, 2021, Judge Kelly denied as moot Samsel's September 11, 2021 motion for medical treatment. Crim. Dkt. p.21. On November 29, Judge Kelly ordered Samsel's temporary release to the custody of the Commonwealth of Pennsylvania for the limited purpose of being incarcerated on the detainer warrant because there was reason to believe Samsel required "medical treatment that may be more readily available at the Pennsylvania facility." Crim. Dkt. Doc. #65.

On April 1, 2022, Samsel filed a motion for review and revocation of his detention order. Crim. Dkt. Doc. #142. Among other things, Samsel maintained that he had not received medical treatment necessitated by injuries sustained while detained. *Id.* at 1-2. Samsel asserted that medical appointments were made while he was in the custody of the Commonwealth of Pennsylvania, but

---

[3] These statements were made in Samsel's unopposed motion pursuant to 18 U.S.C. § 3142(i) for temporary release to the custody of the Commonwealth of Pennsylvania for the limited purpose of being incarcerated on the detainer warrant lodged against him in that jurisdiction.

he had been released back to federal custody and no longer had access to his medical records. *Id.* at 10-11. In its response, the Government refuted Samsel's claim that that he did not have access to his medical records at United States Penitentiary ("USP") Lewisburg,[4] pointing out that defense counsel had acknowledged receipt of voluminous records. Crim. Dkt. Doc. #147 at 20-21. The Government stated that a physician at USP Lewisburg had asked Samsel to tell his attorney that the doctor needed those records.[5] *Id.* at 21. The Government also explained that the medical providers at USP Lewisburg have access to all of Samsel's medical records from federal detention centers because BOP records are centralized. *Id.* On May 18, 2022, Judge Cobb denied Samsel's motion seeking revocation of the detention order.[6] Crim. Dkt. Doc. #161.

By Order dated May 17, 2022, Judge Cobb ordered that Samsel receive an independent medical evaluation at a tertiary research center within 14 days, and recommended the University of Pennsylvania Medical Center in Philadelphia. Crim. Dkt. Doc. #159. The United States obtained an extension due to COVID quarantine. *See* Crim. Dkt. Docs. #164, 165. The United States had to seek a second extension because Samsel refused to allow Health Services Staff at FDC Philadelphia to examine him in order to provide the referral necessary to schedule the evaluation. Crim. Dkt. Doc. #171.

---

[4] On March 4, 2022, United States District Judge Jia M. Cobb ordered USMS to transfer Samsel from the Federal Detention Center ("FDC") in Philadelphia to USP Lewisburg. Crim. Dkt. Doc. #119.

[5] In a subsequent filing, the Government stated that defense counsel had not provided Samsel's records as requested by Dr. Andrew Edinger (at USP Lewisburg) in March 2022. Crim. Dkt. Doc. #183 n.3. USMS subsequently provided the records to the BOP. *Id.*

[6] On July 22, 2022, the United States Court of Appeals for the District of Columbia Circuit affirmed the order denying Samsel's motion to revoke pretrial detention, holding that the district court did not err in finding that no condition or combination of conditions would adequately address Samsel's threat to the community or err in finding that Samsel's medical condition did not warrant his release. *United States v. Samsel*, Docket No. 22-3034, 2022 WL 2903450 (D.C. Cir. July 22, 2022).

4

On June 28, 2022, Samsel was seen for an independent vascular consultation regarding his thoracic outlet syndrome by vascular surgeon Babak Abai, M.D., Thomas Jefferson University in Philadelphia. *See* 24-cv-05027 Dkt. #1 pp.99-100; Crim. Dkt. Doc. #195-1 at 2. Dr. Abai recommended that Samsel first see Dr. Lazar regarding his nipple discharge, and undergo certain diagnostic tests. Crim. Dkt. Doc. 195-1 at 2. The medical staff at FDC Philadelphia ordered the tests (x-rays, bilateral mammogram, ultrasound of the left breast). Crim. Dkt. Doc. #180-1 at 1; *see* Doc. #183 at 8; *see also* Dkt. #1 p.115, 117-19, 121.

In a July 6, 2022 "Status Report" Samsel asked to be temporarily released from custody pursuant 18 U.S.C. § 3142(i) (implicitly on home confinement) or, alternatively sent back to USP Lewisburg. Crim. Dkt. Doc. #180; *see also* Doc. #186. By Order dated July 28, 2022, Judge Cobb denied Samsel's renewed request for temporary release but requested that USMS and/or BOP transfer him back to USP Lewisburg, noting that the evaluation to determine whether he had any immediately pressing medical issues had occurred and acknowledging that the transfer might delay the follow-up testing. Crim. Dkt. Doc. #187.

Samsel was seen by breast surgeon Melissa A. Lazar, M.D., at Jefferson Vascular Center at Thomas Jefferson University Hospital on August 8, 2022. *See* Dkt. #1 pp.131-37. She told Samsel that the bilateral mammogram had not revealed any suspicious findings in either breast; there was moderate gynecomastia. *Id.* p.133-34 (repeated 147-51). The ultrasound had shown moderate gynecomastia. *Id.* p.134. Due to the continued nipple discharge, Dr. Lazar believed that surgical excisional biopsy was reasonable. *Id.* p. 134. On September 1, the surgery (bilateral breast excisional biopsy) was canceled because Samsel had refused the required pre-admission lab testing. *See* 24-cv-05027 Dkt. #1 p.49. Dr. Lazar confirmed that no further follow-up was needed and discharge Samsel from her care. *Id.; see also* Crim. Dkt. Doc. #195 at 3.

On September 2, 2022, Samsel filed a renewed motion for temporary release for the purpose of having a surgical procedure to his chest performed by a Dr. Jared Liebman rather a doctor chosen by USMS or BOP. Crim. Dkt. Doc. #191. The United States opposed the motion, arguing that Samsel's decision to refuse and obstruct medical care arranged by his detention facility was not a valid reason for release. Crim. Dkt. Doc. #195. The biopsy, which Samsel himself had prevented from going forward, was neither urgent nor required.

Samsel was transferred back to USP Lewisburg. *See* Crim. Dkt. Doc. #198.

By Minute Order dated October 3, 2022, Judge Cobb denied Samsel's second motion for temporary release, holding in relevant part that Samsel's argument that release was necessary to receive medical care from his doctors, as opposed to doctors selected by BOP, fails because BOP may impose restrictions on medical treatments as long as the restrictions are reasonably related to a legitimate government interest. Crim. Dkt. p.35. Here, the Government's interest in protecting the safety of the community and ensuring Samsel's appearance at trial satisfied that standard. "Additionally, Defendant has not shown that the government's treatment is inadequate, partially because Defendant has refused procedures meant to address his health concerns." However, Judge Cobb ordered BOP to give Samsel another opportunity to complete the required laboratory testing and receive the biopsy. *Id.* She also ordered the Government to provide Samsel and his doctors with necessary medical information to the extent that any has been withheld. *Id.*

On November 18, 2022, Samsel was seen by an independent vascular surgeon, Evan Joseph Ryer, M.D., for evaluation of his thoracic outlet syndrome, chronic bilateral subclavian vein occlusions since 2012, and pain and paresthesia since 2015. *See* Dkt. #1 pp. 49-58. Samsel had stopped taking Eliquis, which had managed his symptoms, in 2019. *Id*. p.50. Dr. Ryer concluded

that Samsel would not benefit from surgery (1st rib resection), and recommended physical therapy. *Id*. p.56.

On December 16, 2022, Samsel filed a motion to seeking to delay his trial and compel medical treatment and production of medical records, including third-party records. Crim. Dkt. Doc. #229. In its opposition, the United States reported that Samsel had undergone another vascular surgery consult on November 19, and "they believe that . . . surgery is not likely to be of further benefit in attempting to restore venous return from either arm." Crim. Dkt. Doc. #232 at 3. Samsel also had a plastic surgery consult; the results had not yet been received. *Id*.

In a Minute Order dated January 30, 2023, Judge Cobb agreed that Samsel had medical issues that deserve attention, but "has not shown that inadequate medical treatment is the proximate cause of his inability to prepare for trial" and the Court does not have authority to compel third parties to provide the requested relief. Crim. Dkt. p.40. However, "to the extent that [BOP] is withholding records, Defendant may draft a proposed order and serve it on [BOP] to give them an opportunity to respond." *Id*.

On August 27, 2023, Samsel filed a motion for reconsideration of detention order based on, *inter alia*, medical necessity. Crim. Dkt. Doc. #264. Samsel asked to be released "for the purpose of a medical procedure, specifically surgery on his chest" by Dr. Liebman. *Id.* at 1. Samsel had not seen a third-party medical provider since arriving at the MDC on April 25, 2023. *Id.* at 4. In its response, the United States recounted that: during a hearing on August 23, Samsel stated that after being placed in the Special Housing Unit on August 20 (pending a hearing on his violating MDC rules concerning unauthorized phone usage), he was injured in a physical altercation with his cellmate; and at a hearing on August 30, he stated that in the altercation, his tooth had been cracked exposing a nerve, and he had been unable to eat or drink anything for six days. Crim. Dkt.

Doc. #266 at 7-8; *see also* Doc. #265. However, Samsel's medical records documented that he reported on the day prior to the fight, that he had broken his tooth while chewing and that he was being provided with dental care. Crim. Dkt. Doc. #266 at 8. After the fight, Samsel was treated for facial bruising and abrasions, and later for gastrointestinal complaints, vomiting and loss of appetite due to no longer having access to Suboxone, which he had been purchasing from other detainees. *Id*.

By Minute Order dated October 2, 2023, Judge Cobb denied Samsel's motion for reconsideration of the detention order. Crim. Dkt. pp.44-45. With respect to Samsel's argument that he should be released to be treated by his own doctors, the Court found that "nothing has significantly changed" since he last sought release, and that on the current record, the Court could not find that he has a need for immediate surgery or medical intervention that cannot be provided by the facility or that requires his release. *Id.* p.45. In a Minute Order dated October 3, 2023, also denying the motion for reconsideration, Judge Cobb noted that Samsel currently was being housed ahead of trial at the Central Treatment Facility in Washington, D.C. *Id.*

Judge Cobb conducted the bench trial for Samsel and four co-defendants over seven days between October 23 and November 2, 2023. *See* Crim. Dkt. pp.47-50. On February 2, 2024, Judge Cobb rendered the verdict finding Samsel guilty on eight counts: obstructing officers during a civil disorder; assaulting Officer C.E. (inflicting bodily injury using a deadly/dangerous weapon); disorderly conduct in the Capitol Building or Grounds; act of physical violence in the Capitol Building or Grounds; obstruction of an official proceeding; civil disorder; assaulting, resisting or impeding USCP officers (physical contact or intent to commit another felony); and assaulting, resisting or impeding USCP officers using a deadly/dangerous weapon. Samsel is scheduled to be sentenced along with his co-defendants on September 19, 2024. *See id*. p.57.

On or about February 27, 2024, Samsel was transferred back to the MDC. *See* Lewis Decl. Ex. 1. He is currently housed there. *Id.* A plastic surgery consultation regarding Samsel's gynecomastia was scheduled for September 17,[7] but it will be rescheduled because Samsel will not be in Brooklyn. Declaration of Bruce Bialor, M.D., dated August 20, 2024 ("Bialor Decl." ¶ 7. Samsel is being sentenced in the District of Columbia on September 19. *See* Crim. Dkt. at 57. The USMS will need to transfer Samsel to a facility closer to the District of Columbia prior to his sentencing. Federal Respondents are unable to provide specifics, such as the transfer dates and location, due to security concerns.

### B. The Habeas Petition (24-cv-05026)

On July 19, 2024, Samsel filed a petition for a writ of habeas corpus (Dkt. #1), which was docketed as pursuant to 28 U.S.C. § 2241. Samsel asked to be "immediately released for transport to external physicians or teams or department of physicians who are not under the influence or control of the Respondents." Petition at 7. Samsel also asked that the Court "order the Respondents to fulfill their non-discretionary responsibilities and cooperate in good faith and to the maximum extent possible in the unhindered, uninfluenced medical evaluations of external, independent doctors and the implementation of those doctor's orders" (*id*. at 35).

### C. The Mandamus Petition  (24-cv-05027)

Also on July 19, 2024, Samsel filed a pleading styled as a petition for a writ of mandamus in a separate action, 24-cv-05027 (RPK)(PK). Samsel claimed to have had "emergency medical conditions that require immediate attention and treatment" since 2015, and that BOP has been denying him necessary medical care since his arrest in 2021. Dkt. 24-cv-05027 Doc. #1 pp.6-7.

---

[7] Gynecomastia is a benign (non-cancerous) increase of breast volume in males most often due to an imbalance of testosterone and estrogen. www.htmpl://My.clevelandclinic.org/health/symptoms/16227-enlarged-male-breast-tissue-gynecomastia.

Samsel identified the medical condition as bilateral thoracic outlet syndrome and said that prior to his arrest, he had been scheduled to undergo a glandsectomy by a plastic surgeon in March 2021. *Id.* He stated that he also has bilateral gynecomastia. *Id.* p.7.

The mandamus relief that Samsel requested with respect to Federal Respondents is:[8]

(C) order all Respondents to immediately ("today") transport him to the nearest hospital that has "a full-range of medical capabilities including the glandsectomy procedure by a plastic surgeon [he] was prescribed almost 4 years ago, treatment of blood clots and including surgery to correct congenital bone deformities and/or birth defects;"

(D) order all Respondents cooperate ensuring that the hospital has access to all of his medical records and contact information for previous doctors;

(E) order all Respondents cooperate in allowing him to obtain "updated diagnosis, documentation, prescription and medical reports so that [he] may present them to the Court as evidence;"

(F) order all Respondents to cooperate in transporting him to Court to appear in this case;

(H) order Attorney General Garland to "address his duties under 42 U.S.C. § 1997a;

(I) order all Respondents cooperate in providing prescribed medication, specifically blood thinning medication; and

(J) order that the cost of medical treatment and surgery not be considered.

*Id.* at 14-17.

---

[8] Samsel's other requests concern the Court itself or unidentified doctors, including ones who diagnose him in the future. Samsel subsequently withdrew (K) (order that he be allowed to undergo the glandsectomy procedure by a particular plastic surgeon) in an errata/motion to amend the petitions filed on August 8, 2024. 24-cv-05026 Dkt. #5; 24-cv-05027 Dkt. #7. The Court granted the motion to amend by Order dated August 14, 2024.

Summonses were issued in this action on July 19, 2024. Dkt. #3. The Certificate of Service indicates that service was made on July 30, 2024. Dkt. # 8.

**D. Samsel's  Motion for Temporary Restraining Orders (24cv-05026)**

On August 5, 2024, Samsel filed a motion for temporary restraining orders ("TRO") in 24-cv-05026. Dkt. #3. Samsel asked the Court to:

(1) prohibit the USMS, BOP and/or the U.S. Department of Justice "generally from interfering with this Court's ability to take jurisdiction of this case and consider the issues by transferring [him] to a different prison in a different city";

(2) he be immediately examined by "doctors qualified in the area or in each of the areas necessary to independently determine what if any urgent care [he] requires to preserve his health while the Court considers this case and to independently confirm that [he] requires the medical care"; and

(3) Respondents locate and disclose any and all medical records, notes, evaluations, etc. that Petitioner reports kept disappearing during his moves.

Dkt. #3 at 2-3.

In a Docket Order dated August 6, 2024, the Court *sua sponte* denied the motion for a TRO because Samsel "has not established that 'immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition. Fed. R. Civ. P. 65(b)(1)." With respect to Samsel's request for a preliminary injunction, the Court directed USMS to serve Respondents with the petition, all papers associated with the motion for preliminary injunction, the Order, and the complaint in 24-cv-0527. The Order provided that "Defendants may file a response to plaintiff's motion by 8/20/24."

**E. Samsel's Motion for Hearing**

On August 8, 2024, Samsel filed a document captioned "Request for Hearing" that was docketed in both actions. 24-cv-05026 Dkt. #4; 24-cv-0527 Dkt. #6. Samsel requested that the Court order an in-person hearing on his TRO motion for the morning of August 9, 2024, or "such

other schedule as the Court might order" and that the Court "shorten the time for a briefing schedule and for action." Request at 2.

**F. The Orders Dated August 14, 2024**

By Order dated August 14, 2024, the Court consolidated Samsel's two cases under Docket No. 24-cv-05026, because they involve common questions of law or fact.

In a separate Order, the Court denied Samsel's motion for a hearing on his request for a TRO as moot. The Court stated that it had directed defendants to respond to Samsel's motion for preliminary injunction ("PI Motion") by August 20, 2014, and that the Court would determine whether to set a hearing on that motion after it is fully briefed.

## ARGUMENT

### I.
### PETITIONER'S MOTION FOR
### A PRELIMINARY INJUNCTION MUST BE DENIED

Samsel requests that the Court issue a preliminary injunction that would both prohibit Federal Respondents from taking necessary action (*i.e.*, not transferring him out of the MDC for sentencing) and order them to take actions (arrange for medical examinations and provide him copies of his medical records). *See* 24-cv-05026 Dkt. #3 ("Motion"). As show below, Samsel has not demonstrated that this extraordinary relief is warranted.

**A. Standards for Issuance of a Preliminary Injunction**

"A preliminary injunction is 'an extraordinary remedy never awarded as of right.'" *Winter v. National Resources Defense Council*, 555 U.S. 7, 20 (2008); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course.").

12

In the Second Circuit, a party seeking a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) must show: "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *North American Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018); *see Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989). Where "the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Beal v. Stern*, 184 F.3d 117, 122 (2d Cir. 1999) (citations and internal quotation marks omitted).

If a movant is seeking a prohibitory injunction, *i.e.,* one that would maintain the *status quo* by requiring the non-movant to refrain from taking some action, the ordinary preliminary injunction standard is heightened; the movant must show a strong likelihood of success on the merits. *See Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024); *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023).

## B. Samsel Does Not Meet the Standards for Issuance of a Preliminary Injunction

### 1. Samsel is Not Entitled to an Injunction Prohibiting His Transfer

Samsel, who is housed at the MDC, asks this Court to prohibit USMS, BOP and/or DOJ from transferring him to a different prison in a different city. Dkt. #3 at 2-3. Samsel cannot meet the standards for a prohibitory preliminary injunction. He cannot show irreparable harm, a strong likelihood of success on the merits, or that a preliminary injunction barring his transfer would be in the public interest.

In his motion, Samsel states that he has been "informally informed" that it is likely that he will be moved around August 7, 2024. Dkt. #3 at 3. Samsel argues that this Court should not "moot" its authority to hear the habeas petition by allowing him to be transferred out of the MDC. *Id.* at 2-3. However, Samsel must be moved. USMS will need to transfer Samsel to a facility closer to the federal court in the District of Columbia for sentencing. As of the filing of this memorandum of law, Samsel is to be sentenced on September 19, 2024. *See* Crim Dkt. 57-58 (Order dated July 25, 2024). His transfer indisputably is for a legitimate government objective. This Court's enjoining Samsel's transfer would unduly delay his sentencing and that of his co-defendants in a high profile case, as well as inhibit another federal court's ability to manage its docket.

Further, to the extent that Samsel is maintaining that his transfer from the MDC, which is necessary for him to be sentenced in another jurisdiction, will somehow result in irreparable harm (death or damage to his health), such argument is specious. As discussed more fully below in Point B.2, Samsel has not been denied or deprived of proper medical care.

Samsel describes the MDC as a "notoriously dilapidated facility" and "one of the most crowded, troubled and dangerous prisons in the United States" and complained about having been sent there. *See* Mandamus Pet. at 4, 5. Yet, Samsel wants a Court order directing that he remain there indefinitely. The "relief" Samsel seeks would delay of his sentencing resulting in Samsel not being designated by the BOP to a permanent facility, which would increase the possibility that he would be provided the independent medical care he believes that he needs.

In sum, this Court should deny Samsel's request that it enjoin his transfer out of the MDC.

## 2. The Court Should Not Order an Immediate Independent Medical Examination

Samsel is asking the Court to order that he be "immediately examined" at a hospital to independently determine what if any urgent care he requires to preserve his health while the Court

considers this case. Dkt. #3 at 2. Samsel cannot show irreparable harm, a likelihood of success on the merits, or that a preliminary injunction would be in the public interest.

Contrary to any impression that Samsel's motion for preliminary injunction, habeas petition or mandamus petition may have given, Samsel is not imminent danger of death or serious damage to his health. Samsel's current medical conditions are opioid use disorder (for which Suboxone is prescribed), hyperlipidemia (for which Lipitor is prescribed), and recurrent venous blood clots (for which Apixaban is prescribed). *See* Bialor Decl. ¶¶ 4, 10. He also has gynecomastia and thoracic outlet syndrome. *See id*. ¶ 7.

Regarding Samsel's longstanding gynecomastia and thoracic outlet syndrome, on July 15, 2024 – three weeks before Samsel filed his motion for a TRO on August 5, 2024, – MDC medical staff referred Samsel for a plastic surgery consultation. *See* Bialor Decl. ¶ 7. The appointment was scheduled for September 17. *Id.* However, it will be rescheduled because it conflicts with Samsel's needing to be in the District of Columbia for his sentencing on September 19. *Id.*; *see* Crim. Dkt. p.17 (July 25, 2024 Order setting sentencing for September 19). Even if the appointment cannot be rescheduled until after Samsel returns to the MDC, possible surgery (the reason for the consultation) is not urgent. Bialor Decl. ¶ 7. Prior examinations and testing were benign. In August 2022, Dr. Lazar, the breast surgeon who saw Samsel for an independent consultation for bilateral breast masses and nipple discharge, reported that her examination was not suspicious for malignancy. *See supra*, at 5. There were no suspicious findings on the subsequent bilateral mammogram or sonogram. *See id.* The elective breast tissue biopsy was not done at that time (two years ago) because Samsel refused the required preoperative testing. *See id.*; *see also* Bialor Decl. ¶ 8. In November 2022, Dr. Ryer, the vascular surgeon who performed an independent evaluation

of Samsel's thoracic outlet syndrome concluded that Samsel would not benefit from surgery. *See* Dkt. #1 p.56.

In sum, Samsel is not entitled to a preliminary injunction. The BOP had already scheduled an appointment with the consultant before Samsel filed his habeas petition and prior to Judge Cobb rescheduling his sentencing to September 19. The appointment will be rescheduled.

### 3. <u>An Injunction is Not Necessary with Respect to Medical Records</u>

Samsel seeks an order directing Respondents to locate and disclose his medical records. Dkt. #3 at 3. What Samsel omits from his request for a preliminary injunction is that over the past few years, USMS and BOP have provided copies of Samsel's medical records in their possession to Samsel's defense counsel multiple times. *See, e.g., supra at* 3 (USMS had provided all of Samsel's medical records available to it to defense counsel as of September 20, 2021), 4 (on November 22, 2021, defense counsel acknowledged Samsel had received "voluminous production of medical records"). Indeed, in his habeas petition, Samsel stated "I possess extensive medical records that can be provided to the Court upon request." Dkt. #1 at 3.

In the event that Samsel is arguing that he himself does not have copies of his medical records in his possession (contrary to his statement in the habeas petition), BOP will to provide them to him (again) in the absence of a court order. However, in view of Samsel's imminent transfer out of the MDC for sentencing and the possibility that those records would not travel with him, it would be prudent to wait. Should Samsel prefers not to wait, if he designates someone to receive them, his BOP medical records can be produced within ten business days of the designation. However, BOP has no obligation to obtain copies of Samsel's medical records from third party providers with which it does not contract.

In sum, no court order is necessary concerning the production of Samsel's medical records in the possession of Federal Respondents. Therefore, Samsel's request for injunctive relief should be denied.

## II.
## PETITIONER'S REQUEST FOR
## A WRIT OF HABEAS CORPUS MUST BE DENIED

When a federal prisoner challenges prison conditions, he may seek habeas relief under 28 U.S.C. § 2241. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Habeas relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Samsel's request for habeas relief directing Respondents to immediately release him "for transport to external physicians or teams or departments of physicians who are not under the influence or control of the Respondents" must be denied. *See* Petition at 7. Samsel failed to exhaust administrative remedies, and has offered no basis for the Court to waive the exhaustion requirement. In the event that the Court finds a basis to waive the administrative exhaustion requirement, Samsel cannot show that he is entitled to the habeas relief he is demanding. Accordingly, the Petition must be denied.

### A.   Samsel Has Not Exhausted Administrative Remedies

"[F]ederal prisoners must exhaust their administrative remedies prior to filing a petition for habeas relief." *Carmona*, 243 F.3d at 634. Nevertheless, "[a] court may excuse the failure to exhaust where (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain circumstances a plaintiff has raised a substantial constitutional question." *Lallave v. Martinez*, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022) (internal quotation

marks and citation omitted) (holding in that case, that exhaustion of BOP administrative remedies as a perquisite to habeas review would not be futile and that the petitioner could not show cause and prejudice that would excuse her from the exhaustion requirement due to irreparable harm in the absence of immediate habeas review).

Here, Samsel has not initiated, let alone completed the BOP Administrative Remedy Program with respect to his current request for habeas relief of "transport to external physicians or teams or departments of physicians who are not under the influence or control of the Respondents." The multi-step administrative remedy process requires an inmate to: first attempt to resolve the issue informally with prison staff; if unsuccessful, file a Request for Administrative Remedy form (BP-9) with the warden; if the Warden denies the request or does not respond within 20 days, appeal to the BOP Regional Director using the BP-10 form; and if the Regional Director denies the appeal or fails to respond within 30 days, appeal to the BOP General Counsel using the Central Office Administrative Remedy Appeal form (BP-11). 28 C.F.R. §§ 542.13-542.15. *See also* Lewis Decl." ¶¶ 5-9. It is not until the General Counsel denies the appeal or fails to respond within 40 days that the claim is administratively exhausted. *See Lallave*, 609 F. Supp. 3d at 179.

At most, on September 13, 2022,[9] Samsel filed a BP-9 form concerning "MEDICARE CARE – DELAY/ACCESS TO IMPROPER/INADEQUATE," which the Warden at the FDC Philadelphia rejected on September 15, 2022, because Samsel had not attempted informal resolution first. *See* Lewis Decl. ¶ 11 and Ex. 4 at 2. Samsel did not file a form B-10 or otherwise

---

[9] Eleven days earlier, in the criminal case, Samsel had filed a renewed motion for temporary release for the purpose of having a surgical procedure to his chest. *See supra* at 5-6. The motion was denied because Samsel "has not shown that the government's treatment is inadequate, partially because [Samsel] has refused procedures meant to address his health concerns." Crim Dkt. p.35.

further pursue his administrative remedies in 2022. Lewis Decl. ¶ 11. In the intervening two years, Samsel has not pursued his available administrative remedies.

Because Samsel did not exhaust administrative remedies, he is not entitled to habeas relief.[10]

## 2. <u>Samsel is Not Entitled to a Writ of Habeas Corpus</u>

In the event that the Court waives the administrative exhaustion requirement, Samsel has not shown that he is entitled to a writ of habeas corpus directing Federal Respondents to immediately release and transport him for external medical evaluation.

Although Samsel invokes that Eighth Amendment (*see* Petition at 10, 32-35), he has not shown that his constitutional rights are being violated. The Eighth Amendment, which prohibits cruel and inhuman punishment, proscribes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[N]ot every lapse in medical care is a constitutional wrong." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). To establish deliberate indifference that violates the Eighth Amendment the prisoner must show: (1) that he has been actually deprived of adequate medical care; and (2) the inadequacy in medical care is sufficiently serious. *Id.* at 279-80. Samsel cannot show that either of these requirements is satisfied.

Federal Respondents are not "knowingly, intentionally, consistently, and by pattern and practice systematically denying medical treatment" to Samsel. *See* Pet. at 10, 19. As discussed above at 14-15 and shown in the Bialor Declaration, Samsel has been receiving medical care for his current conditions since his return to the MDC in late February 2024. In addition, on July 15, 2024, BOP medical staff ordered the independent consultative examination by a plastic surgeon

---

[10] Samsel has not advanced an argument that there is any basis for the Court to waive the exhaustion requirement Federal Respondents reserve the right to respond to any such argument that Samsel may make in reply to this opposition.

that Samsel wants for his gynecomastia and thoracic outlet syndrome. *See* Bialor Decl. ¶ 7. It merits noting that Samsel has a history of impeding Federal Respondents' efforts to provide medical care and testing. *See supra* at 4-6. Samsel could have had the elective surgical biopsy two years ago. It has been his own lack of cooperation, as well as his disruptive conduct that has caused Federal Defendants to transfer him between facilities, that has impeded Samsel from receiving noncritical medical care that he believes is so pressing. As to Samsel's thoracic outlet syndrome, in November 2022, the consultative vascular surgeon concluded that the surgery Samsel wanted (1st rib resection) would not be of benefit to him. *See* Dkt. #1 p.56.

Finally, Federal Respondents note that, unrelated to Samsel's unfounded claims concerning inadequate medical treatment, the habeas petition includes, without explanation, photographs seemingly intended to trigger disgust or invoke sympathy concerning his conditions of confinement at the MDC. *See* Dkt. 1 at 13. These photographs, which have appeared in national media and online, are fabrications. Samsel included the photographs in his August 27, 2023 motion for reconsideration of his detention order in his criminal case (Crim Dkt. Doc. #264). As the Government's response to that motion pointed out, they are staged photographs taken with a contraband cellphone showing Samsel on a yoga mat (not his bed) in a broom closet (not his cell) while wearing only boxer shorts (not his BOP-issued clothing). Crim. Dkt. Doc. #266 at 4-7.

In sum, the habeas petition must be denied because Samsel did not exhaust administrative remedies prior to filing it. In any event, Federal Respondents are not violating Samsel's Eighth Amendment rights, and Samsel cannot show that he is entitled to relief on that basis.

**III.**
**PETITIONER'S REQUEST FOR**
**A WRIT OF MANDAMUS MUST BE DENIED**

The mandamus relief that Samsel seeks against Federal Respondents primarily concerns medical care and to some extent duplicates his habeas petition. As discussed below, Samsel does not satisfy the requirements for issuance of a writ of mandamus.

**A. Mandamus Standards**

A district court has "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owned to the plaintiff." 28 U.S.C. § 1361. "The prerequisites for issuance of a writ of mandamus are peremptory: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989) (internal quotation marks and citations omitted); *see also Benzman v. Whitman*, 523 F.3d 119, 132-33 (2d Cir. 2008).

"The common law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616-17 (1982).

**B. Samsel Does Not Satisfy the Requirements for Issuance of a Writ of Mandamus**

Samsel's petition for a writ of mandamus seeks to have this Court order Federal Respondents to: immediately ("today") transport him to the nearest hospital with "a full-range of medical capabilities" including the glandsectomy procedure, treatment of blood clots and surgery to correct congenital bone deformities and/or birth defects; cooperate to ensure that the hospital has access to all of his medical records and contact information for previous doctors; cooperate in

21

allowing him to obtain "updated diagnosis, documentation, prescription and medical reports so that [he] may present them to the Court as evidence;" transport him to Court to appear in this case; cooperate in providing prescribed medication, specifically blood thinning medication; and not consider the cost of medical treatment and surgery. 24-cv-05027 Dkt. #1 at 14-17 (items (C)-(E), (I)-(J).

Samsel does not have a clear right to any of this relief, and Federal Respondents do not have a plainly defined ad peremptory duty to act. Although Samsel does have a right to adequate medical care (*see supra* at 18-19), he is not entitled to dictate that Federal Defendants perform specific acts that they do not have a duty to perform. Samsel is not in such dire straits as his various court filings suggest. Samsel does not have any medical condition requiring "immediate" transport to the nearest hospital for evaluation. Rather, he has longstanding, non-life-threatening conditions medical conditions for which the BOP has been providing adequate medical care.

The breast surgeon who evaluated Samsel with respect to his gynecomastia in 2022, made no findings suspicious for malignancy, and her recommendation for a limited biopsy was precautionary measure, not due to a critical condition. *See supra* at 5-6, Indeed, after Samsel refused to have the required pre-operative testing, and the hospital canceled the procedure, Dr. Lazar reported that there was no need for a follow-up examination. *See supra* at 6. No treatment has been recommended. Samsel's thoracic outlet syndrome is a longstanding condition that he has had since at least 2015, well before his arrest in January 2021. *See* 24-cv-05027 Dkt. #1 at 6-7 ("I, . . ., have had emergency medical issues since 2015 when doctors discovered I suffer from Bilateral Neurogenic Thoracic Outlet Syndrome, a condition which causes compression of my blood vessel between my neck and shoulder."). The vascular surgeon who evaluated Samsel in November 2022, concluded that he would not benefit from surgery. *See supra* at 6-7.

 In any event, MDC medical staff have already scheduled a surgical consult for Samsel regarding both of these conditions. *See* Bialor Decl. ¶ 7.

To the extent that Samsel is seeking a writ of mandamus ordering Federal Respondents to prescribe blood thinning medication, such relief is wholly unwarranted. MDC medical staff prescribed an anti-coagulant (Apixaban) for Samsel's history of recurrent blood clots, and are providing refills of that prescription. *See* Bialor Decl. ¶ 4.

As to medical records, BOP cannot provide records or information that it does not possess. BOP does not have records from Samsel's outside providers that have not been shared with it.

Samsel also requests that the Court order Attorney General Garland to "address his duties under 42 U.S. Code § 1997a" to protect persons in an institution, "investigate, initiate, and order immediate medical treatment as specified below" and "notify the Court whether or not he will act under 42 U.S. Code § 1997a so that the Court will know if it needs to take other action." 24-cv-05027 Dkt. #1 at 16 (item (H)). This ambiguous request appears to be referring to Samsel's request in (I), which is the "immediate medical treatment specified below," and asks that Respondents be ordered to provide him with blood thinning medication. *Id*. As noted above, an anti-coagulant – *i.e.*, a blood thinning medication – has been prescribed and the prescriptions have been refilled. *See* Bialor Decl. ¶ 4. Samsel's assertions to the contrary are untrue.

In addition, Samsel is not entitled to issuance of a writ of mandamus because he has not exhausted all other avenues of relief. As shown above at 17-19, Samsel has not pursued the BOP Administrative Remedy Program, which is available to him. On this basis alone, he cannot obtain mandamus relief. Samsel only sought habeas relief simultaneously with his mandamus action.

In sum, Samsel's requests issuance of a writ of mandamus must be denied.

## **CONCLUSION**

For the foregoing reasons, Federal Respondents respectfully request that the Court deny

Samsel's motion for a preliminary injunction, deny Samsel's petition for a writ of habeas corpus,

deny Samsel's request for issuance of a writ of mandamus, and dismiss this action.

Dated:  Brooklyn, New York
        August 20, 2024

                                        Respectfully submitted,

                                        BREON PEACE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        *Attorney for Federal Respondents*
                                        271-A Cadman Plaza East, 7th Floor
                                        Brooklyn, New York 11201

s/ *Kathleen A. Mahoney*
KATHLEEN A. MAHONEY
Assistant U.S. Attorney
Senior Litigation Counsel
    (Of Counsel)
kathleen.mahoney@usdoj.gov
(718) 254-6026

24