UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RYAN SAMSEL,

      Petitioner,      **MEMORANDUM AND ORDER**
  v.             24-CV-5026 (RPK)

COLETTE S. PETERS, *Director of Federal Bureau of Prison*; METROPOLITAN DETENTION CENTER BROOKLYN FEDERAL BUREAU OF PRISONS; RONALD DAVIS, *Director U.S. Marshalls Service*; MERRICK GARLAND, *U.S. Attorney General*; and THOMAS N. FAUST, *Director of Corrections*,

      Respondents.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

 *Pro se* petitioner Ryan Samsel has moved for a preliminary injunction under 28 U.S.C. § 2241 against respondents Director of the Federal Bureau of Prisons ("BOP") Colette S. Peters, the Metropolitan Detention Center Brooklyn BOP ("MDC Brooklyn"), Director of the United States Marshals Service ("USMS") Ronald Davis, United States Attorney General Merrick Garland, and the District of Columbia Director of Corrections Thomas N. Faust. Petitioner seeks (1) to enjoin respondents from transferring petitioner from MDC Brooklyn, (2) to require certain medical examinations of petitioner, and (3) to require the disclosure of petitioner's medical records. *See* Mot. for Prelim. Inj. 2–3 (Dkt. #3) ("Pet'r's PI Mot."). Respondents Peters, MDC Brooklyn, Davis, and Garland (collectively, "respondents"), the only respondents that have appeared in this case, oppose the motion. *See* Mem. in Opp'n 12–17 (Dkt. #9). For the reasons explained below, petitioner's motion for a preliminary injunction is denied.

1

## BACKGROUND

Petitioner was arrested in January 2021 on federal charges stemming from the breach of the United States Capitol building on January 6.  Decl. of Nicole T. Lewis ("Lewis Decl.") (Dkt. #10), Ex. 2, at 1; Jan. 30, 2021 Dkt. Entry, *United States v. Samsel*, 21-CR-00537 (JMC) (D.D.C. Jan. 30, 2021) (hereinafter "D.D.C. Crim. Dkt.").  Petitioner has since been in custody at various federal and local facilities, Lewis Decl., Ex. 1, pending the adjudication of his criminal case in the United States District Court for the District of Columbia, *see generally* D.D.C. Crim. Dkt.  The following facts regarding his health and medical treatment are taken from petitioner's filings, their attachments, and the filings in petitioner's criminal case in the District of Columbia, as noted below.

### I.     Petitioner's Medical Condition

For at least the past ten years, petitioner has suffered from various medical complications due to Bilateral Neurogenic Thoracic Outlet Syndrome, Venous Thoracic Outlet Syndrome, and gynecomastia.  These conditions cause blood clots and swelling.  Pet. 10–13, 18–26 (Dkt. #1) ("Habeas Pet."); Compl. 6–8, 20–24, *Samsel v. Peters*, 24-CV-05027 (E.D.N.Y. July 19, 2024) (Dkt. #1) ("Mandamus Pet."); *see* Mandamus Pet. 167–232 (medical records dated from 2014 to 2020).[1]  Petitioner states that he also has "irregular glands in [his] chest, armpit, left arm and neck," and "[t]he glands behind [his] nipples . . . regularly discharge blood."  Habeas Pet. 11.  Mammograms and venograms at state facilities confirm he has blood clots and deep vein thrombosis throughout his chest and bilaterally in his arms.  *Ibid.*

Petitioner alleges that before his arrest, he was scheduled for surgery by a plastic surgeon in March of 2021, and that while in federal custody, other doctors have twice recommended the

---

[1] Citations to petitioner's habeas petition and mandamus petition use ECF pagination. Other record citations use internal pagination unless otherwise noted.

same surgical procedure.  Habeas Pet. 11; Mandamus Pet. 7.  Petitioner refers to this procedure as a "glandsectomy," but attached medical documents indicate that the procedure contemplated is a glandectomy, or a surgery to treat gynecomastia.  Habeas Pet. 50.

More specifically, while in federal custody, petitioner was examined by a breast surgeon at Thomas Jefferson University Hospital in Philadelphia in August 2022.  The surgeon noted "no suspicious findings" from either petitioner's examination or certain imaging that had occurred the prior week, but scheduled a surgical biopsy.  Habeas Pet. 131–37, 147–51, 153–58; Mandamus Pet. 112–18, 128–32, 134–39.  That surgery was later cancelled for reasons that are in dispute.  A BOP administrative note in the medical records submitted by petitioner states that the "surgery was cancelled by the outside provider as a result of [petitioner's] refusal to get the required" pre-admission lab testing and that Thomas Jefferson thereafter discharged petitioner and "confirmed that no further follow-up appointment [was] needed."  Habeas Pet. 68; Mandamus Pet. 49.  Petitioner alleges that Dr. Andrew Edinger, from BOP's prison in Lewisburg, Pennsylvania, cancelled the procedure without consulting petitioner.  Mot. to Amend 2 (Dkt. #5).  Petitioner also alleges Dr. Edinger had previously submitted a medical recommendation to the district judge presiding over petitioner's criminal case stating that petitioner "required immediate surgery urgently," but that Dr. Edinger changed his recommendation in testimony before the district court after "the FBI had visited him and pressured him to change his medical opinion."  *Id.* at 3.

In November 2022, petitioner was examined by a vascular surgeon at the Vascular Surgery Hospital for Advanced Medicine in Danville, Pennsylvania.  *See* Habeas Pet. 49–59; Mandamus Pet. 151–61.  The surgeon advised against a rib resection surgery to treat petitioner's thoracic outlet syndrome.  Habeas Pet. 56–57; Mandamus Pet. 158–59.  The surgeon noted that petitioner was scheduled for a plastic surgery consult in April 2023 for "evaluation of lymph nodes/mass of

3

left brea[s]t with nipple discharge," Habeas Pet. 56, and described it as of the "utmost import" that petitioner be "evaluated and treated" for these conditions, *id.* at 57.

Petitioner states that three days before he was scheduled for a plastic surgery appointment, he "was transferred to MDC Brooklyn without any of the past follow ups." *Id.* at 13. He alleges that while at MDC Brooklyn, "several large arching lumps have surfaced on the back of [his] neck," and that "[l]ast November, painful tumors . . . surfaced in [his] foot and leg and remain untreated." *Id.* at 19.

## II.     Litigation in Petitioner's Criminal Case

Petitioner was arrested in January 2021, and, since then, has made numerous requests for medical care in his underlying criminal case.

In September 2021, petitioner filed an emergency motion in his criminal case in the district court for the District of Columbia seeking certain medical treatment and the production of his medical records. D.D.C. Crim. Dkt., Emergency Mot. (Dkt. #49). Petitioner's counsel thereafter acknowledged receipt of "a voluminous production of medical records" from USMS. *See* D.D.C. Crim. Dkt., Mot. for Temporary Release 2–3 (Dkt. #63). Petitioner's request for treatment was denied upon the court's granting petitioner's unopposed motion for "temporary release to the custody of the Commonwealth of Pennsylvania" for the purpose of medical treatment. *See id.* at 1–2, 4; D.D.C. Crim. Dkt., Nov. 23, 2021 Minute Order; D.D.C. Crim. Dkt., Nov. 29, 2021 Order (Dkt. #65).

In April 2022, petitioner filed a motion to revoke his pretrial detention based on alleged deficiencies in his medical treatment. *See* D.D.C. Crim. Dkt., Mot. to Revoke Pretrial Detention (Dkt. #142). Petitioner's motion was denied the following month, but he was ordered to be

4

transferred to a "tertiary research center" for further treatment.  *See* D.D.C. Crim. Dkt., May 17, 2022 Order (Dkt. #159); D.D.C. Crim. Dkt., May 18, 2022 Order (Dkt. #161).

In September 2022, petitioner filed in his criminal case a second motion for release to permit him to undergo a glandectomy with a doctor who had been scheduled to operate on petitioner prior to his arrest.  *See* D.D.C. Crim. Dkt., Second Mot. for Release (Dkt. #191).  That motion was denied in October 2022.  *See* D.D.C. Crim. Dkt., Oct. 3, 2022 Order.

In December 2022, petitioner filed in his criminal case a motion to compel "medical treatment and medication, to include any anti-coagulation therapy and [] pain medication" and the release of all medical records.  D.D.C. Crim. Dkt., Mot. to Compel Treatment 8–9 (Dkt. #229).  The court denied petitioner's request to compel treatment, but granted petitioner the opportunity to identify any medical records "that [BOP] is withholding" for purposes of his request to compel the release of medical records.  D.D.C. Crim. Dkt., Jan. 30, 2023 Minute Order.  No follow up request appears on the docket.  *See generally* D.D.C. Crim. Dkt.

In August 2023, petitioner moved for reconsideration of his detention order based in part on medical necessity and petitioner's request to see the doctor with whom petitioner's surgery had been scheduled prior to his arrest.  D.D.C. Crim. Dkt., Mot. for Recons. of Detention 1 (Dkt. #264).  The motion was denied in October 2023.  D.D.C. Crim. Dkt., Oct. 2, 2023 Minute Order.

After a bench trial, petitioner was convicted in February 2024 of eight counts: obstruction of an official proceeding; disorderly conduct in a Capitol building or grounds; act of physical violence at the Capitol building or grounds; two counts of civil disorder; and three counts of assault.  Lewis Decl., Ex. 3.  Petitioner was transferred to MDC Brooklyn that same month, *id.*, Ex. 1, where he has remained in custody pending his sentencing in Washington, D.C. on September 19, 2024, D.D.C. Crim. Dkt., July 25, 2024 Minute Order.

5

Petitioner has recently sought to continue his sentencing proceeding in the District of Columbia. In his motion seeking an adjournment, petitioner states that he "is scheduled to undergo surgery later this fall, with a pre-surgery consultation scheduled in September." D.D.C. Crim. Dkt., Mot. to Continue Sentencing (Dkt. #393).

### III. Habeas and Mandamus Filings and Motion for Emergency Relief

In July 2024, petitioner filed in this district a petition for a writ of habeas corpus and a petition for a writ of mandamus. *See* Habeas Pet.; Mandamus Pet. The habeas petition requests petitioner's immediate release and transfer to independent physicians for certain medical treatment, including: "[i]mmediate examination and treatment of blood clots, large lumps, and/or tumors"; consultations with oncology specialists "concerning the glandular growths of the male breasts and blood clots"; a consultation with the Thomas Jefferson breast cancer surgeon; "[s]urgery to remove excess bone growth pinching major blood vessels near the neck and shoulder"; and "[r]econstructive surgery by a plastic surgeon to perform . . . a glandsectomy." *See* Habeas Pet. 7–9, 35. The mandamus petition requests substantially similar relief. Mandamus Pet. 14–17 (Section VII.C–J). Petitioner alleges that respondents have blocked his medical treatment by repeatedly transferring him between facilities. *See* Habeas Pet. 9, 26–28; Mandamus Pet. 4–5, 24, 26–27. Petitioner also puts forth allegations regarding the conditions of medical care generally in MDC Brooklyn, *see* Habeas Pet. 25–27; Mandamus Pet. 4–5, and in Washington D.C. jails, *see* Habeas Pet. 27–28; Mandamus Pet. 18–20.

Petitioner filed the present motion seeking a temporary restraining order or, alternatively, a preliminary injunction. *See* Pet'r's PI Mot. 2. Petitioner seeks injunctive relief in three respects: (1) to require that he "be immediately examined by doctors qualified in . . . each of the areas necessary to independently determine what if any urgent care [he] requires to preserve his health

6

while the Court considers this case and to independently confirm that [he] requires the medical care," (2) to prevent his transfer from MDC Brooklyn, and (3) to compel the disclosure of petitioner's medical records. *Id.* at 2–3.  In support, petitioner incorporates his habeas petition and his mandamus petition, as subsequently amended. *See id.* at 3; Mot. to Amend.  Petitioner argues that he is "at risk of medical harm . . . even death," that respondents have been "shuttling [petitioner] around to disrupt and avoid him accessing medical care," that petitioner's health risks outweigh any burden on respondents, and that a preliminary injunction is in the public interest. *Id.* at 3–5.

Petitioner moved for a hearing on his request for a temporary restraining order and preliminary injunction. *See* Mot. for Hearing (Dkt. #4).  The Court denied petitioner's request for a temporary restraining order and directed respondents to respond to petitioner's request for a preliminary injunction. *See* Aug. 6, 2024 Order.  The Court also denied petitioner's motion for a hearing on his request for a temporary restraining order as moot and deferred judgment on his request for a hearing regarding a preliminary injunction. *See* Aug. 14, 2024 Order.

Respondents timely filed their opposition to petitioner's request for a preliminary injunction as well as his request for habeas and mandamus relief. *See generally* Mem. in Opp'n.  As relevant to this motion, respondents argue that petitioner's eventual transfer is necessary for petitioner to attend his sentencing and does not threaten irreparable harm, that petitioner has not been deprived of proper medical care, and that respondents have already produced, on several occasions, copies of petitioner's medical records. *See* Mem. in Opp'n 12–17.  Respondents also submitted a declaration from BOP Dr. Bruce Bialor. *See* Decl. of Bruce Bialor, M.D. (Dkt. #11) ("Bialor Decl.").  Dr. Bialor attests to petitioner's plastic surgery consultation scheduled in

7

September and notes various medications which petitioner has been prescribed at MDC Brooklyn. *Id.* at ¶¶ 4, 7.

## LEGAL STANDARD

The Second Circuit "allows for injunctive relief for unconstitutional prison conditions" upon a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 348 (S.D.N.Y. 2020). A preliminary injunction, however, is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). Such injunctions are "never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). To obtain such an injunction, as a general matter, a litigant must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the movant's favor, and (4) that an injunction is in the public interest. *Pharaohs GC, Inc. v. U.S. Small Bus. Admin.*, 990 F.3d 217, 225 (2d Cir. 2021).

When a petitioner proceeds *pro se*, his pleadings must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

For the reasons described below, petitioner fails to establish a likelihood of irreparable harm absent the injunctive relief he seeks. Petitioner's motion for a preliminary injunction is therefore denied.[2]

First, petitioner has not demonstrated a likelihood of irreparable harm absent a preliminary injunction mandating that respondents arrange for new independent medical examinations. Petitioner's own filings establish that petitioner has had multiple evaluations by specialists outside the Bureau of Prisons since his arrest in 2021. For example, petitioner was evaluated by a breast surgeon in August 2022, *see* Habeas Pet. 49–58, he was evaluated by a vascular surgeon in November 2022, *see id.* at 131–37, 147–51, 153–58, and by petitioner's own account he "is scheduled to undergo surgery later this fall, with a pre-surgery consultation scheduled in September," D.D.C. Crim. Dkt., Mot. to Continue Sentencing (Dkt. #393); *cf.* Bialor Decl. ¶ 7. Petitioner has not on this record demonstrated that he will suffer irreparable harm absent additional court-ordered medical evaluations.

Second, petitioner has failed to demonstrate a likelihood of irreparable harm absent a preliminary injunction that requires respondents to keep petitioner at the MDC, instead of transporting him to the District of Columbia for sentencing on September 19. Petitioner suggests that such an injunction is needed because care may be delayed if he is removed from the MDC. Pet'r's PI Mot. 2, 4. But while transporting petitioner to the District of Columbia may delay his pre-surgery consultation, Bialor Decl. ¶ 7, petitioner's submissions do not support the conclusion

---

[2] Because this decision on petitioner's motion relies only on the facts as presented by petitioner or as judicially noticed from the docket in petitioner's criminal case, petitioner's request for a hearing is denied because there is no need for live testimony to resolve factual disputes. *See Md. Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 984 (2d Cir. 1997) ("Generally, the district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when essential facts are not in dispute."); *see, e.g., Jarecke v. Hensley*, 552 F. Supp. 2d 261, 264 (D. Conn. 2008).

that such a delay will lead to irreparable harm.  Petitioner's filings and their attachments indicate that petitioner suffers from chronic conditions that he has lived with for years.  While one doctor in 2022 wrote that it was "[o]f utmost import" that petitioner be "evaluated and treated for his breast mass and nipple discharge," *see* Habeas Pet. 57, and a breast surgeon in the same year deemed it "reasonable" for petitioner to undergo surgical excision of breast tissue due to his experiencing nipple discharge, *id.* at 150, the fact that petitioner has been scheduled for both a pre-surgery consultation and surgery indicates that BOP has arranged medical care aimed at these objectives.  And none of the records that petitioner has supplied describe it as urgent that petitioner undergo surgery to treat his longstanding gynecomastia (or any other health condition) immediately.  Petitioner suggests that immediate intervention is necessary based on a concern that recent worsening of his symptoms is caused by cancer.  *See* Habeas Pet. 19–21.  But petitioner has not submitted any record evidence suggesting that this is the case.  Multiple doctors have expressed the view that petitioner's gynecomastia is incidental to past steroid use, *id.* at 50, 60–61, and the mammogram and breast ultrasounds conducted by Thomas Jefferson University Hospital revealed "no suspicious findings," *see id.* at 131, 134, 136, 147, 150, 153, 155; *see also* Mandamus Pet. 164.  Accordingly, petitioner's submissions do not support a conclusion that he will likely suffer irreparable harm if his pre-surgical consultation is delayed when he is transported from MDC to Washington, D.C., for sentencing.

Because petitioner has not put forth specific facts indicating that he requires urgent treatment that will be impeded by his transport for sentencing, petitioner has failed to establish that he will likely suffer irreparable harm in the absence of an injunction forbidding his transfer from MDC.  *See Quint v. Lantz*, 248 F. App'x 218, 219 (2d Cir. 2007) (finding that a prisoner failed to show irreparable harm necessary to support a preliminary injunction ordering certain medical

10

treatment because "the evidence in the record does not support a claim that the proposed treatment options are medically necessary"); *Jarecke*, 552 F. Supp. 2d at 265 ("Prisoners do not have a constitutional right to their treatment of choice; disagreement over treatment does not rise to the level of a constitutional violation as long as the treatment provided is adequate." (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998))); *see also, e.g.*, *Jones v. Frost*, No. 23-CV-277, 2023 WL 5573783, at *2 (W.D. Va. Aug. 29, 2023) (holding that prisoner failed to "establish a likelihood of irreparable harm" because he was "scheduled [for a] CT scan" and "offer[ed] no evidence . . . suggesting that he will suffer any aggravation of his abdominal condition if he does not receive a CT scan on his preferred schedule"); *Bradford v. Ogbuehi*, No. 17-CV-1128, 2020 WL 6130892, at *2 (E.D. Cal. Oct. 19, 2020) ("Plaintiff[, a state prisoner,] has failed to establish the imminent irreparable harm required to support a preliminary injunction.  Indeed, the medical document attached to Plaintiff's motion specifically states that a chronic care appointment has been scheduled for Plaintiff."); *Moss v. Griffen*, No. 15-CV-74, 2015 WL 4880398, at *2 (E.D. Ark. July 20, 2015) ("[T]he Court finds Plaintiff does not provide sufficient evidence of a threat of irreparable harm to [require] a hearing . . . . The medical records show[, *inter alia*,] that Plaintiff . . . has been scheduled for a surgical consultation by an independent surgeon."), *report and recommendation adopted*, 2015 WL 4762992 (E.D. Ark. Aug. 10, 2015).

Petitioner has also not established irreparable harm from his potential transfer from MDC by arguing that the transfer may moot his requests for equitable relief in these lawsuits. *See* Pet'r's PI Mot. 2–3.  Even if these recently filed cases were to be mooted because of a transfer, petitioner would be free to litigate his constitutional claims regarding medical care against appropriate custodians at a new facility, such as the facility to which he is designated after sentencing. Accordingly, the risk that this particular lawsuit will be mooted does not establish a likelihood of

irreparable harm. *See Allen v. Ronan*, 764 F. Supp. 738, 740 (D. Conn. 1991) (denying prisoner's request for a preliminary injunction to prevent his transfer to a different prison, despite plaintiff's claim that such relief was necessary to prevent defendants from "silenc[ing]" plaintiff by mooting his claims); *Town of Newburgh, New York v. Newburgh EOM LLC*, No. 23-CV-4212 (CS), 2024 WL 1507585, at *8 (S.D.N.Y. Apr. 8, 2024) (noting the view of "[a] majority of courts" that "a risk of mootness, standing alone, does not constitute irreparable harm" for the purposes of a stay pending appeal (quoting *Liberty Synergistics, Inc. v. Microflo Ltd.*, No. 11-CV-523, 2013 WL 101427, at *2 n.3 (E.D.N.Y. Jan. 8, 2013))). Petitioner's request to preliminarily enjoin respondents from transferring him is denied.

 Finally, petitioner has failed to establish that he is likely to suffer irreparable harm absent a preliminary injunction requiring respondents to locate and disclose to petitioner all medical records maintained by prison officials. Petitioner does not identify any particular materials that he believes are missing from the "extensive" and "voluminous" set of records already produced to him, Habeas Pet. 3; *see id.* at 28 (noting that petitioner has "assembled most or all of [his] extensive relevant medical records"); *see also id.* at 39–159; Mandamus Pet. 41–232. While petitioner complains that respondents have, in the past, allegedly misplaced or lost petitioner's medical records, *see* Habeas Pet. 9, 27–28; Mandamus Pet. 27; Pet'r's PI Mot. 3; Mot. to Amend 2, these allegations of past mishandling are insufficient to establish that petitioner will suffer irreparable harm in the absence of a judicial order governing respondents' recordkeeping while litigation in this case proceeds. Petitioner's motion to preliminarily enjoin respondents to require them to locate and disclose all his medical records is therefore denied.

## CONCLUSION

Petitioner's motion for a preliminary injunction order is denied. The Court reserves judgment on petitioner's request for habeas and mandamus relief. Petitioner may file a reply to respondents' opposition to such relief within 14 days of this Memorandum and Order.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: August 28, 2024
       Brooklyn, New York